IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02846-RMR-NRN

JOHNS MANVILLE CORPORATION, and
JOHNS MANVILLE,

    Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
LIBERTY INSURANCE CORPORATION,
IRONSHORE SPECIALTY INSURANCE COMPANY,
NORTH AMERICAN ELITE INSURANCE COMPANY, n/k/a/ other Swiss Re Corporate Solutions Elite Insurance Corporation, and
ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,

    Defendants.

---

**ORDER ON GRANTING DEFENDANT'S MOTION TO EXCLUDE FROM COURT'S "ONE SUMMARY JUDGMENT" RULE DEFENDANT'S THRESHOLD MOTION ON DUTY TO INDEMNIFY AND GRANTING DEFENDANTS' REQUEST TO BIFURCATE AND STAY**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter came before the Court on January 14, 2026, for a planning conference. *See* ECF No. 47. The parties had jointly moved the Court to convert the scheduling conference to a planning conference. ECF No. 37. In advance of the planning conference, the Court asked the parties to file short position statements on how they saw the case proceeding. ECF No. 39.

    I.    **BACKGROUND**

This is a complicated insurance dispute arising out of a jury verdict in a case tried before my former colleague, Chief Magistrate Judge (ret.) Michael Hegarty, *Chase*

*Manufacturing Inc., d/b/a Thermal Pipe Shields v. Johns Manville Corp.*, 1:19-cv-00872-MEH (D. Colorado) (the "Underlying Action"). Johns Manville Corporation ("JMC") manufactured and sold an industrial pipe insulation product known as "calsil" (calcium silicate). A company called Thermal Pipe Shields ("TPS") sold its own calsil, in competition with JMC. In the Underlying Action, TPS's initial complaint asserted five claims for relief based on JMC's conduct in competing with TPS. One of those claims alleged that JMC had monopolized the calsil market in violation of section 2 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 2 ("Monopolization Claim"). Also included in the Underlying Action were allegations that JMC had disparaged TPS's product. At trial, TPS procured an over $20 million antitrust judgment. JMC paid TPS a substantial, multi-million-dollar amount to settle that antitrust judgment.

In the instant case, Plaintiffs JMC and Johns Mansville ("JM") (collectively "Plaintiffs") have sued their insurers for breach of contract, common law bad faith breach of insurance contract, statutory violations for unreasonable delay or denial of payment, and for declaratory judgment that the insurers have a duty to indemnify JM under various insurance policies. Plaintiffs specifically allege that the insurers breached their respective policies by refusing to settle the TPS case before trial, by allowing it to proceed to a $20,352,126.00 judgment against JMC and then refusing to indemnify Plaintiffs for the judgment. ECF No. 1 at ¶¶ 69–76; 92–99. Plaintiffs likewise assert bad faith claims arising from the insurers' claims handling conduct throughout the pendency of the TPS case. *Id.* at 56–58; 69–91. Plaintiffs also allege that even if the primary insurers, Defendants Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, and Ironshore Specialty Insurance Company (collectively, the "Liberty

2

Defendants"), owed no duty to indemnify, Plaintiffs' excess or umbrella insurers, Defendants Swiss Re and Allianz (collectively, the "Excess Insurers"), would be required to "drop down" and provide both defense and indemnity coverage. The Liberty Defendants and Excess Insurers are hereinafter collectively referred to as "Defendants."

Each of the Defendants' applicable policies contain a "personal and advertising injury" coverage part, which Plaintiffs insist is designed to defend and indemnify Plaintiffs for oral or written publication of material that disparages a person's or organization's goods, products, or services. *Id.* at ¶¶ 43–48. Because TPS alleged disparagement in its March 2019 complaint and continued to press the issue through trial in May of 2024, Plaintiffs assert that JMC's disparagement of TPS's product played a role in the jury's monopolization verdict, and the Defendants should be required to indemnify Plaintiffs for the many millions that they had to pay to settle the judgment.

The Defendants' position, on the other hand, is that they have no duty to indemnify because their policies do not cover the antitrust/monopolization verdict and resulting judgment. Defendants point to the verdict, which found JMC liable for monopolization but not for disparagement. Because monopolization or antitrust violations would not be covered by the insurance policies at issue, Defendants argue that they had (and have) no obligation to indemnify JMC for its settlement payment. The Liberty Defendants, who paid a substantial amount in defending JMC in the Underlying Action under a reservation of rights, also seek to recoup their defense costs expended in the Underlying Action.

## II.   HOW THE CASE SHOULD PROCEED

The Liberty Defendants' position statement suggests that the most efficient and fair way to approach this complicated insurance dispute is by setting a briefing schedule for early motions for summary judgment on the indemnity issue and staying discovery pending a ruling on such motions. ECF No. 43. The Excess Insurers joined in the Liberty Defendants' position. ECF No. 42. The Excess Insurers also asked that if early motions for summary judgment do not entirely resolve this case, then there should be a scheduling conference where they may ask that the Court "stage the case in phases" so that issues of allocation can be addressed separately before bad faith. *Id.* at 2.

Plaintiffs in their position statement argue that Defendants' request to bifurcate the issue of indemnity and stay discovery pending a decision on the indemnity issue should be rejected because (1) discovery is required on Defendants' duties to indemnify beyond the underlying trial evidence; (2) bifurcation and a stay of discovery will prejudice the Plaintiffs by unnecessarily prolonging and increasing the cost of pursuing relief for Plaintiff's bad faith claims; and (3) an ordinary case schedule under which discovery is conducted on all claims and defenses simultaneously best serves the interests of the parties and judicial economy under the circumstances. ECF No. 40.

On January 14, 2026, the Court held a conference where the parties discussed their respective positions on how the case should proceed. *See* ECF No. 47 (Courtroom Minutes). The parties were instructed to confer and submit by January 20, 2026 a proposed briefing schedule for early summary judgment motions on the issue of indemnity. The parties submitted a "Joint Proposed Briefing Schedule," ECF No. 48,

4

and the Liberty Defendant also moved to exclude from Judge Rodriguez's "One Summary Judgment" rule their threshold motion on the duty to indemnify. ECF No. 49.

### III. DECISION

Based on the parties' submissions and after hearing argument, on February 10, 2026, the Court set the following briefing deadlines:

- Deadline to File an early dispositive motion on the duty to indemnify: March 20, 2026
- Response Deadline: May 8, 2026
- Reply Deadline: May 28, 2026

ECF No. 51.

In the Court's view, it makes sense to allow an early motion for summary judgment on the indemnity question because there is some probability that the issue of indemnity could be resolved based on the language of the insurance policies at issue, the jury verdict, and the underlying trial record, without the need for additional discovery. *See, e.g.*, *N. H. Ins. Co. v. TSG Ski & Golf, LLC*, 128 F.4th 1337 (10th Cir. 2025) (affirming summary judgment for insurer where underlying trial record showed that policy's knowledge-of-falsity exclusion barred coverage for insured's underlying defamation); *Admiral Ins. Co. v. Hosler*, 626 F. Supp. 2d 1105 (D. Colo. 2009) (granting summary judgment for insurer where underlying trial record showed there was no covered "bodily injury"). Or, as the Colorado Supreme Court has said, when the claims "proceed through the crucible of trial," "the court must look to the facts as they developed at trial and the ultimate judgment" to determine whether an insurer has a duty to indemnify the insured. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003). Here, it has been represented that the trial transcript and underlying record has already been prepared.

5

Plaintiffs claim that the indemnification question cannot be determined solely from the underlying trial record. Plaintiffs say that resolution of the indemnity question also requires discovery on,

> among other things, the entire Underlying Action, the Insurers' claim files (including their investigation of the Underlying Action, examination and interpretation of the policies' terms and conditions, and related communications before, during, and after the TPS trial), their participation and direction in defending the Underlying Action, their decisions in evaluating and determining potential liability and damages both at the time of the verdict and prior to trial during settlement discussions with TPS, the drafting history of the policies and certain specific endorsements, their claims and underwriting manuals and guidelines, and their prior adjustment of personal and advertising injury claims involving disparagement.

ECF No. 40 at 6. But Plaintiffs cite no authority that such expansive discovery would be justified under these circumstances. Allowing such discovery on the issue of indemnity would appear to be inconsistent with the Tenth Circuit's decision in *N. H. Ins. Co.* and other authorities cited above. If Plaintiffs truly feel that discovery is required to properly respond to Defendants' early summary judgment motion on indemnity, then, using the mechanism embodied in Rule 56(d), they may ask for discovery at that time. But for now the Court is not convinced that there is any additional discovery needed (beyond what is found in the insurance policies and the underlying trial record) to decide the question of indemnity, which is a critical issue in this case.

While there may be issues that remain after determination of the indemnity question, including issues of allocation and Plaintiffs' bad faith claims, the indemnity question is a driving part of this litigation, to the tune of around twenty million dollars. Resolving that question relatively early in the case will likely narrow and focus the discovery going forward.

Having granted Defendants' request to file an early motion for summary judgment on the issue of indemnity, the Court will also stay discovery pending a decision on such an early motion. Plaintiffs argue that a stay of discovery will unfairly prejudice them. Plaintiffs argue that part of Defendants' bad faith conduct relates to their failure to settle the case before trial and their bad faith claim will just "lie dormant" while the indemnity issue is being sorted out, a form of prejudice that militates against bifurcation and any stay of discovery. ECF No. 40 at 8.

But this is not the standard insurance bad faith case that the Court usually sees, with an auto-owner suing its insurer for unpaid medical expenses under an uninsured motorist policy, or a homeowner suing the home insurer for bad faith in adjusting a hail damage claim. Those cases would rarely justify the bifurcation of the coverage and bad faith aspects of a case. The discovery in those cases would be relatively simple: production of maybe a 50–100-page claim file, a deposition of an adjuster, the insured, and a Rule 30(b)(6) representative. But in this case, the Underlying Action dragged on for years. It is represented that the Liberty Defendants spent over $10 million in attorney fees in defending the case, including initially before Judge Hegarty, then to the Tenth Circuit Court of Appeals, and then back again through trial. The claim file itself likely has thousands of pages and just reviewing the claim file for privilege would be an arduous and expensive process. Staying discovery pending a determination of the indemnity question will likely save significant time and money, and then discovery can be more directed on the issues that remain in the case after a decision on the indemnity issue.

Also, this case does not involve an individual suing an insurance company. This is a dispute between corporate behemoths.[1] At the end of the day, this case is about which of the various corporate parties is entitled to the millions of dollars at issue—whether JMC will have to pay back the millions of dollars spent on defense; whether the Defendants will have to pay the millions spent by JMC to settle the case; whether the Excess Insurers will have to "drop down" and pay any of these millions of dollars; and whether the Defendants will be on the hook for twice the expected insurance benefits and attorney fees or more if they are found liable for statutory or common law bad faith. These companies are not like homeowners without a house or injured vehicle owners with unpaid medical expenses. The parties here can afford to wait 5–6 months for a decision on the early motions for summary judgment without risk of undue prejudice.

Also, because all the issues in this case involve the Underlying Action and how it played out, there will undoubtedly be significant and complex attorney-client privilege issues that will arise over the course of what is likely to be substantial and expensive discovery. It is not in the interest of the Court or the public to spend the Court's time addressing complicated discovery disputes when a significant dispositive motion is pending.

The Court recognizes that the early summary judgment motion on indemnity may not completely dispose of the case, but it may dispose of a significant aspect of the case and will likely dictate the breadth of discovery for any remaining part of the case.

---

[1] Public records indicate Johns Manville, a Berkshire Hathaway company, generates approximately $4 billion in annual revenue, while the primary insurer, Liberty Mutual Insurance, reported annual consolidated revenue of $50.2 billion for 2024.

Courts consider the propriety of a stay by balancing five factors: (1) a plaintiff's interests in proceeding expeditiously and the potential prejudice of a delay; (2) the burden on the defendants if no stay is issued; (3) the convenience to the court; (4) the interests of non-parties; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). "[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided." *Ellis v. J.R.'s Country Stores, Inc.*, No. 12-cv-01916-CMA-KLM, 2012 WL 6153513, at *1 (quoting 8 *Wright & Miller's Federal Practice & Procedure* § 2040, at 521–22 (2d ed.1994)) (further citations omitted); *see also Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.") (internal quotation marks and citation omitted).

Here, having balanced the various factors listed in the *String Cheese Incident* case, the Court believes that a stay of discovery pending a determination of the early motion on the question of indemnity is appropriate.

Finally, the Court initially granted Defendants' request to exclude the threshold motion on the duty to indemnify from Judge Rodriguez's "One Summary Judgment" rule so that, if the indemnification issue does not resolve the entire case, Defendants can later file another summary judgment motion on remaining issues in the case. Plaintiffs objected and moved for reconsideration, arguing that they had not had a fair opportunity to brief the issue. ECF No. 53. The Court granted reconsideration and allowed Plaintiffs

to file an opposition. ECF No. 54. Plaintiffs filed their opposition on February 19, 2026. ECF No. 56.

Having reviewed Plaintiffs opposition to Defendants' request for exemption from the "One Summary Judgment" rule, the Court stands by its original decision. Defendants' motion to exclude their threshold motion on the duty to indemnify from the "One Summary Judgment" rule, ECF No. 49, is granted. However, any party seeking to file a subsequent motion for summary judgment will have to comply with Judge Rodriguez's Standing Order Regarding Rule 56 Motions (updated July 7, 2025), including by seeking a conference with Judge Rodriguez.

The one modification to my prior ruling is that Defendants will not be entitled to file a subsequent summary judgment motion *on the issue of indemnity*. They are today taking the position that the issue of indemnity can (and must) be decided based on the language of the policies, the underlying trial verdict, and the underlying trial record, without any additional discovery. If their motion is denied, either because Plaintiffs show there are issues of fact yet to be resolved, or for any other reason, and the case moves on to discovery, Defendants will not later be allowed to file a further motion for summary judgment on the indemnity question bolstered by that additional discovery. That would not be fair to Plaintiffs. Defendants have one bullet to use on the indemnity question, and if they choose to fire it now, they will not be allowed to take a second shot later.

One of Plaintiffs' complaints is that if Defendants are allowed to file "multiple" motions for summary judgment, Plaintiffs should be allowed the same opportunity. ECF No. 56 at 2. First, Defendants are not being allowed to file "multiple" motions. They are perhaps being allowed *two* motions for summary judgment—one early motion on the

10

issue of indemnity, and a later motion after discovery is closed addressing other issues that may remain in the case. If Plaintiffs want the same opportunity to file a similar early motion or cross-motion on the issue of indemnity, they are welcome to do so, without risking their ability to file a motion on other issues at the conclusion of the case. But Plaintiffs apparently believe they need discovery to prove up the indemnity obligation and presumably will not be filing such an early motion. There is, however, nothing unequal about how the Court is treating Plaintiffs and Defendants on the issue of indemnity. Plaintiffs say that they may want to file a discrete early motion on summary judgment on other issues, such as the Excess Insurers' obligations to provide defense coverage which Plaintiffs claim should be a straightforward matter of policy interpretation. *Id.* at 10. If Plaintiffs wish to do that, then they should file a discrete motion seeking that relief, rather than presenting the request in their opposition to Defendant's motion. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").

### IV.   CONCLUSION

It is hereby **ORDERED** that Defendants' Motion to Exclude from the Court's "One Summary Judgment" Rule Defendants' Threshold Motion on Duty to Indemnify, ECF No. 49, is **GRANTED**.

It is further **ORDERED** that discovery is **STAYED** pending a determination on Defendants' early motion for summary judgment on the issue of indemnity, for which a briefing schedule has already been set.

Dated at Denver, Colorado this 27th day of February 2026

_____
N. Reid Neureiter
United States Magistrate Judge